JAMES F. BRADY, Respondent, v. DANIEL H. SANTANDREA et al., Individually and as Copartners Doing Business as DAN'S COAL & MASON SUPPLIES, Appellants.— Appeal by defendants from a judgment of the Supreme Court entered July 17, 1956, in Albany County, upon a verdict in favor of plaintiff rendered at a Trial Term and from an order entered July 17, 1956, denying defendants' motion to set aside the verdict. Plaintiff's recovery in this negligence action was predicated upon evidence that the jury was entitled to find preponderant, in brief outline as follows: Upon going to defendants' place of business to pick up a load of architectural shingles, plaintiff was told or requested by one of the defendant partners to get them from a supply which was stacked on a loading platform in bundles weighing about 70 pounds each. Plaintiff did so, removed two bundles and, while removing a third, the stack leaned forward and began to fall. Plaintiff testified: "I tried to hold them back, but it was just too much weight for me * * * the weight of the shingles and all tumbled me over into the truck." There was evidence that the shingles had been stacked by defendants' employee earlier that day and that the pile fell because all the bundles had not been stacked, in accordance with good usage and defendants' usual practice, so as to become interlocked. The jury properly found negligence and, also, that plaintiff was free from contributory negligence. Plaintiff sustained an internal derangement of the knee joint involving the cartilage, the medial meniscus being torn and snapped loose, locking or fusing the joint. The injury was painful for a considerable time. When exercises and other therapy failed to aid the condition, plaintiff's leg was encased in a cast from ankle to groin for some 40 days. Subsequently, according to plaintiff, the knee would occasionally "give out" and swell and the orthopedist who treated him saw him several times "when the knee would snap or lock on him", the last complaint of that nature made to the doctor being about eight months after the accident and some four months before the trial. The doctor advised plaintiff that he might return to work some three and one-half months after the

accident "but to be careful about the use of the knee and the risk on roofs * * * and I said he has to be cautious about that in the future, with this knee to snap or lock on a roof." In the light of this advice, it was not unreasonable for plaintiff to take up an employment less hazardous than his former work as a roofer, as he testified he had done, with a resulting diminution of wages of from $25 to $50 per week. After commencing other work, plaintiff did, in fact, have difficulty with the knee, which required medical treatment. Appellants concede special damages of $1,350, covering plaintiff's medical expenses and his loss of wages, at the minimum rate testified to, while actually out of work. In our view, the verdict was large but we are unable to say that it was excessive. Judgment and order affirmed, with costs to respondent. Bergan, J. P., Coon, Halpern and Gibson, JJ., concur.